## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN WOOTEN,

                Petitioner,

     v.

                          Civil No. 17-10014

                          Hon. Terrence G. Berg

TONY TRIERWEILER,

                Respondent.

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

John Wooten, ("petitioner"), confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed both *pro se* and with the assistance of counsel, Benton C. Martin of the Federal Defender's Office, petitioner challenges his conviction for second-degree murder, Mich. Comp. Laws § 750.317, assault with intent to commit murder, Mich. Comp. Laws § 750.83, one count of felony-firearm, second offense, Mich. Comp. Laws § 750.227b, and one count of felon in possession of a

firearm, Mich. Comp. Laws § 750.224f. For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I.    Factual Background

On August 5, 2011, there was a shooting at a nightclub in Detroit, Michigan. One employee of the club, Alfonso Thomas, was killed, and another, Omar Madison, was shot in the back and injured. Four months later, Petitioner was arrested and charged with first-degree murder, assault with intent to commit murder, and two firearms offenses in connection with the shooting. Petitioner's first trial took place in July, 2012, and ended in a mistrial, which is the subject of petitioner's first claim. Petitioner was convicted at re-trial of the lesser included offense of second-degree murder and guilty as charged on the remaining offenses.

Petitioner's conviction was affirmed on appeal. *People v. Wooten*, No. 314315, 2014 WL 2931934 (Mich. Ct. App. June 26, 2014); *lv. den.* 870 N.W. 2d 924 (Mich. 2015) (unpublished table decision).

Petitioner seeks habeas relief on the following grounds:

I.    The state [court's] decision was an objectionably unreasonable application of clearly established federal law where they held that there was no issue in the claim that Judge Callahan correctly ordered a mistrial after the prosecutor [asked] a key witness about the defendant's silence but erred by not finding

that the prosecutorial misconduct was intentional and that the mistrial should have been granted with prejudice, barring retrial as the defendant's retrial violated the bar against Double Jeopardy.

II.  The state [court's] decision was an objectionably unreasonable application of clearly established law where they held that there was no issue in the claim that the jury verdicts of second-degree murder and assault with intent to murder are based on insufficient evidence and must be overturned.

III.  The state [court's] decision was an objectionably unreasonable application of clearly established federal law where they held that there was no issue in the claim that the prosecutor committed misconduct when, during closing argument, he argued that the defendant must be guilty since he did not turn himself in or provide information to law enforcement about his involvement in the crime.

IV.  The state [court's] decision was an objectionably unreasonable application of clearly established federal law where they held that there was no issue in the claim that the trial court erred by not granting a mistrial with prejudice, in light of the prosecutor's actions during Defendant Wooten's first trial.

(A)  The prosecution is prohibited in its case in chief … from eliciting testimony from a police witness regarding the defendant's pre-arrest silence and/or failure to come forward to explain a claim of self-defense.

(B)  Prearrest silence is inadmissible as substantive evidence of guilt and should be disallowed as evidence in the prosecution's proof[s] in mere anticipation of a self-defense claim.

(C)  Judge Callahan correctly ordered a mistrial after the prosecutor asked a key witness about the defendant's silence, but erred by not finding that the prosecutorial misconduct was intentional and that the mistrial should have been granted with prejudice, barring retrial as defendant's retrial violated the bar against double jeopardy.

## II.  Legal Standard

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529

U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

A "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 565 U.S. 520, 525 (2012). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102–03. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). Therefore, to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court notes that the Michigan Court of Appeals reviewed and rejected petitioner's first and third claims under a plain error standard on the ground that petitioner failed to preserve the issues as a constitutional claim at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

## III. Discussion

### a. Procedural Default

Respondent contends that petitioner's first and third claims are procedurally defaulted because he failed to preserve the issues by objecting at the trial court level.

With regard to petitioner's first claim, defense counsel moved for the court to dismiss the case with prejudice based on the

prosecutor's alleged misconduct at the time he moved for a mistrial. Before petitioner's second trial began, defense counsel again asked the judge to reconsider the denial of his motion to dismiss the case with prejudice.

Regarding petitioner's third claim, defense counsel may have objected off the record because a sidebar conference was conducted after the prosecutor made his comments.

The rule of procedural default is "a matter of comity between the federal and state courts and should not be applied to preclude federal courts from hearing federal constitutional claims when to do so does no disrespect to the state courts and their procedural rules." *Walker v. Engle,* 703 F. 2d 959, 967 (6th Cir. 1983) (internal citations omitted). Thus, when a state court applies a procedural bar that has no foundation either in the record or under state law, the federal courts need not honor that bar. *Id.* In the present case, it appears that petitioner adequately preserved his first claim, thus, it is not clear why the Michigan Court of Appeals found this claim to be unpreserved. Petitioner's third claim may also have been adequately preserved by the sidebar conference, although this is less clear.

In any event, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a

procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Petitioner's first and third claims are meritless; regardless of whether the claims are procedurally defaulted, they fail on their own merit.

### b. Exhaustion Issues

Respondent contends that petitioner's fourth claim is unexhausted because he never presented it to the state courts, although respondent further argues that the claim should be denied on the merits.

A state prisoner seeking federal habeas relief must first exhaust his or her available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c). *See Picard v. Connor*, 404 U. S. 270, 275–78 (1971). In Michigan, a petitioner is required to present each ground to both Michigan appellate courts before seeking federal habeas corpus relief. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Mohn v. Bock*, 208 F.Supp.2d 796, 800 (E.D. Mich. 2002).

A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). An unexhausted claim may be adjudicated by a federal court on habeas review if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees,* 822 F. 2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies). A federal court should dismiss a non-federal or frivolous claim on the merits to save the state courts the useless review of meritless constitutional claims. *See Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir. 1991).

Petitioner's fourth claim is a rehash of the first and third claims he raises, claims he raised on his appeal of right in the state courts. Regardless of whether petitioner's fourth claim is exhausted, it is without merit.

### c. Plaintiff's claims

### Claim # 1: Double Jeopardy

Petitioner first argues that his Fifth Amendment right against being placed in double jeopardy was violated when the judge permitted the prosecutor to re-try petitioner after the judge declared a mistrial at petitioner's first trial. Petitioner contends

that the judge should have dismissed the case with prejudice because the prosecutor through his misconduct intentionally provoked defense counsel into requesting a mistrial.

The Michigan Court of Appeals rejected petitioner's claim at length:

> At the first trial, the officer-in-charge, LaTonya Brooks, testified during cross-examination that she was not aware before trial that a second gun had been "present and had been pulled" by Alfonso Thomas, the deceased victim. During redirect examination, the prosecutor attempted to rehabilitate Brooks by asking questions prompting answers to the effect that there was no evidence of a second gun at the scene of the shooting that would have directed the investigation toward Anthony Gary's pistol. The prosecutor then asked, "In this case, would you have enjoyed talking to the [d]efendant?" Defendant immediately objected, and an on-the-record sidebar conference was held at which the prosecutor explained that he was attempting to rebut defendant's theory that Thomas fired Gary's semiautomatic pistol, which had not been tested by or turned into police, toward defendant, causing defendant to fire back in self-defense. Defendant moved for a mistrial, arguing that the question violated his Fifth Amendment right against compelled self-incrimination, and that the prosecution deliberately asked the improper question so that defendant's forthcoming motion would be granted and the prosecution "would have a second strike" at the case. The prosecution responded that impeaching a defendant with evidence of his prearrest silence was permissible where "it would have been natural for a defendant to come forward." Because defendant implied, in the course of cross-examining Brooks, that she failed to obtain relevant facts about Gary's gun from Gary and Omar

Madison, defendant opened the door to the suggestion that defendant was equally capable of providing Brooks with that information, the prosecution argued.

The trial court found that the facts did not create a situation in which it would have been natural for defendant to come forward because the "charges brought against the defendant were probably almost instantaneous, and then he was not ... found until December 3, 2011, which was almost ... four months later." The judge granted defendant's motion for a mistrial without prejudice, explaining:

> Sometimes when we wind up getting involved in the give and take of a trial, the heat of combat overwhelms our rational decision making processes, and ... that may very well have been the situation today. I don't believe that the last question that was posed to [Brooks] was directly intended to impeach the credibility of the defendant. As I said, even though [defendant] had not even testified as yet, or even made an election in that regard, or was consciously thought of by the prosecution as calling into question the defendant' right to remain silent guaranteed to him under the Fifth Amendment to the Constitution. So, I'm not going to dismiss this case with prejudice.

The trial court did not clearly err when it found that the prosecutor did not intend to create the conditions sufficient to justify declaration of a mistrial. Defendant's argument to the contrary is premised on the theory that the "first trial was not going well" for the prosecution because it "had no idea what its own witnesses were going to say" and the police "had not ... investigated the evidence found at the scene, including an empty gun holster." In an effort to buy more time, defendant argues, the prosecutor deliberately asked Brooks a question, concerning defendant's failure to come forward during the investigation, that violated

defendant's constitutional right against compelled self-incrimination.

On appeal, the prosecution argues that the question was not designed to draw a motion for a mistrial, and further that the question did not violate defendant's constitutional rights because it concerned his prearrest silence. "No person ... shall be compelled in any criminal case to be a witness against himself." US Const, Am V; Const 1963, art 1, § 17. This privilege is violated when the prosecution comments on a defendant's postarrest, post-*Miranda* silence. *Doyle v. Ohio*, 426 U.S. 610, 611; 96 S Ct 2240; 49 L.Ed.2d 91 (1976); *People v. Borgne*, 483 Mich. 178, 186–187; 768 NW2d 290 (2009). However, a defendant's prearrest silence, as well as his silence after arrest but before he receives *Miranda* warnings, may be used against him because the "use of a defendant's silence only deprives a defendant of due process when the government has given the defendant a reason to believe both that he has a right to remain silent and that his invocation of that right will not be used against him." *Fletcher v. Weir*, 455 U.S. 603, 606–607; 102 S Ct 1309; 71 L.Ed.2d 490 (1982); *Jenkins v. Anderson*, 447 U.S. 231, 240; 100 S Ct 2124; 65 L.Ed.2d 86 (1980)("[N]o governmental action induced [the defendant] to remain silent before arrest."); *Borgne*, 483 Mich. at 187–188.

"Neither the Fifth Amendment nor the Michigan Constitution preclude[s] the use of prearrest silence for impeachment purposes." *People v. Clary*, 494 Mich. 260, 266; 833 NW2d 308 (2013) (internal punctuation omitted). "[W]here a defendant has received no *Miranda* warnings, no constitutional difficulties arise from using the defendant's silence before or after his arrest as substantive evidence unless there is reason to conclude that his silence was attributable to the invocation of the defendant's Fifth Amendment privilege." *People v.*

*Solmonson*, 261 Mich. App 657, 665; 683 NW2d 761 (2004).

Defendant appears to take for granted the fact that the prosecutor violated his right against compelled self-incrimination, citing case law holding that a retrial is barred if a defendant's motion for a mistrial is prompted by prosecutorial misconduct, but offering no authority to support his position that the prosecutor's question to Brooks—"In this case, would you have enjoyed talking to the [d]efendant?"—actually constituted misconduct or was contrary to case law interpreting the Fifth Amendment and its counterpart in the Michigan Constitution. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v. Payne*, 285 Mich. App 181, 195; 774 N.W. 2d 714 (2009).

Because the prosecutor's question referred to defendant's failure to present investigators with an explanation that he acted in self-defense, that is, before he was arrested or received *Miranda* warnings, and because there was no indication that he was invoking his Fifth Amendment right to silence, evidence of defendant's prearrest silence was admissible as substantive evidence of his guilt, subject to the Michigan Rules of Evidence. *People v. Hackett*, 460 Mich. 202, 214; 596 N.W. 2d 107 (1999) ("The issue of prearrest silence is one of relevance."); *Solmonson,* 261 Mich. App at 665. Defendant's failure to come forward was especially relevant following defendant's cross-examination of Brooks wherein the implication of his line of questions was that defendant was falsely accused as the result of an inept police investigation that failed to uncover the gun that was fired toward defendant. Because the prosecutor's question was proper, the question was not misconduct, and, therefore, there was no basis upon

which to grant defendant's motion for a mistrial with prejudice.

*People v. Wooten*, 2014 WL 2931934, at * 2–4 (internal footnote omitted).

When a criminal defendant moves for a mistrial, the Double Jeopardy Clause does not bar a retrial. *See Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). However, when the prosecutor's conduct that gave rise to the defendant's motion for a mistrial was intended by the prosecutor "to provoke the defendant into moving for a mistrial," the defendant "may invoke the bar of double jeopardy in a second effort to try him." *Id*. at 679. Nonetheless, the standard for determining whether the prosecutor's actions were intended to goad or provoke a mistrial "is exacting." *Phillips v. Court of Common Pleas, Hamilton Cty., Ohio*, 668 F.3d 804, 811 (6th Cir. 2012) (quoting *Martinez v. Caldwell*, 644 F.3d 238, 243 (5th Cir. 2011)). "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id.*, (quoting *Kennedy*, 456 U.S. at 675–76). The relevant question is the prosecutor's intent. "Intent generally is inferred from objective facts and circumstances." *Id.* A prosecutor's negligence in preparing the case for trial, which may lead to a

mistrial, "is not enough to meet the narrow exception to retrial recognized in *Kennedy*." *Phillips*, 668 F.3d at 813.

As an initial matter, petitioner points to the fact that the trial judge, in declaring a mistrial, found that the prosecutor had engaged in misconduct by questioning Detective Brooks about petitioner's pre-arrest silence and by making comments which suggested that the prosecutor did this because his case was going badly.

The Michigan Court of Appeals rejected petitioner's claim, finding that the prosecutor did not engage in misconduct by asking this question because it was permissible to inquire into petitioner's pre-arrest silence. A deferential standard of review applies to the Michigan Court of Appeals' rejection of petitioner's double jeopardy claim. *Aceval v. MacLaren*, 578 F. App'x. 480, 482–83 (6th Cir. 2014), *as amended* (Sept. 15, 2014).

At the time of petitioner's trial, the Supreme Court held that use of a defendant's pre-arrest silence for impeachment purposes does not violate the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process. *Jenkins v. Anderson*, 447 U.S. 231, 238–39 (1980). At the time of petitioner's trial, the Supreme Court had yet to rule whether the use of a defendant's pre-arrest silence as substantive evidence violated a defendant's constitutional rights, although the Sixth

Circuit had so held. *See Combs v. Coyle,* 205 F.3d 269, 282–83 (6th Cir. 2000). However, the Sixth Circuit acknowledged that the Supreme Court in *Jenkins* never addressed the issue of whether the use of pre-arrest silence as substantive evidence violated the Fifth Amendment. *Id.* at 281. The Sixth Circuit further noted that the federal circuits that had considered the issue were "equally divided" over whether a defendant's pre-arrest silence could be used as substantive evidence of guilt. *Combs,* 205 F. 3d at 282 (collecting cases). Michigan courts at the time of petitioner's trial did allow pre-arrest silence to be used as substantive evidence of guilt. The Supreme Court has since held that prosecutors may use a defendant's pre-arrest silence as substantive evidence of his or her guilt so long as the defendant did not expressly invoke his or her right to remain silent. *Salinas v. Texas*, 133 S. Ct. 2174, 2179, 2184 (2013); *see also Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014).

The Michigan Court of Appeals concluded that the prosecutor did not commit misconduct by questioning Detective Brooks about petitioner's pre-arrest silence because this silence could have been used either as impeachment or substantive evidence. The Supreme Court's decision in *Kennedy* "does not dispense with the requirement that a double jeopardy claim be based on prosecutorial misconduct, but instead acknowledges the requirement." *United States v. Jordan,* 429 F.3d 1032, 1038 (11th Cir. 2005). "Absent

prosecutorial misconduct sufficient to justify a mistrial on a defendant's motion, there is no double jeopardy." *Id*.

In the present case, the prosecutor did not commit misconduct by questioning Detective Brooks about her desire to have questioned petitioner about the shooting prior to the arrest. At a minimum, the prosecutor appears from his argument to have had at least a good faith belief that such a question was relevant and admissible. Because the prosecutor had a good faith belief in the admissibility of petitioner's pre-arrest silence, the trial court and the Michigan Court of Appeals both reasonably concluded that the prosecutor had not intended to provoke a mistrial, so as to bar petitioner's re-prosecution. *See United States v. Calderon*, 618 F. 2d 88, 90 (9th Cir. 1980).

Petitioner argues that even if his pre-arrest silence could have been admissible, the trial judge had ruled in his case that the prosecutor could not ask questions about this subject. Petitioner argues that the prosecutor's disregard of the judge's order evinced an intent to goad a mistrial, which should bar any re-trial.

The fact that the prosecutor ignored the court's order to refrain from asking questions about petitioner's pre-arrest silence would not entitle petitioner to relief absent any additional evidence that the prosecutor intended to provoke petitioner into requesting a mistrial. *See United States v. Dugue*, 690 F.3d 636, 638 (5th Cir.

2012); *see also People v. Copeland,* 127 A.D. 2d 846, 847, 511 N.Y.S. 2d 949, 950 (1987) (Prosecutor's alleged intentional disregard of trial court's instructions, in repeatedly referring to defendant's silence following arrest, did not support inference that prosecutor intended to provoke defendant's motion for mistrial; accordingly, prosecutor's misconduct, though reversible error, did not require barring of retrial on ground of double jeopardy).

At most, the prosecutor's conduct here was overzealous. There is no Supreme Court caselaw "that would bar retrial on double jeopardy grounds when the prosecutorial misconduct in the first trial aimed only to secure a conviction." *Aceval v. MacLaren,* 578 F. App'x. at 483 (citing *Smith v. Coleman,* 521 F. App'x. 444, 449 (6th Cir. 2013)).

At best, petitioner has shown that the question of whether the prosecutor intended to goad the court into granting a mistrial, such that petitioner's retrial should have been barred by the Double Jeopardy Clause, presents a close question that could be decided either way. This fact "militates against the conclusion" that the Michigan Court of Appeals' "application of the relevant United States Supreme Court precedent or its determination of the facts was objectively unreasonable." *Davis v. Lafler*, 658 F. 3d 525, 535 (6th Cir. 2011) (quoting *Lopez v. Wilson*, 426 F. 3d 339, 358 n. 1 (6th Cir. 2005) (en banc) (Cole, J., concurring) (internal quotation marks

omitted). Therefore, petitioner has failed to meet the burden for habeas relief on Double Jeopardy grounds.

## Claim # 2:  Sufficiency of Evidence

Petitioner contends that there was insufficient evidence presented to rebut his self-defense claim.

Under Michigan law, a person acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, fn. 1 (6th Cir. 1999) (citing to *People v. Heflin*, 434 Mich. 482, 456 N.W. 2d 10 (1990)).

Petitioner's claim is non-cognizable on habeas review. Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree,* 486 Mich. 693, 704, 712 (2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission.  It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155, n. 76 (2012) (quoting *Dupree,* 486 Mich. at 704, n. 11). Although Michigan law requires the prosecutor to disprove a claim of self-defense (*see People v. Watts*, 61 Mich. App. 309, 311 (1975)), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required...." *See Smith v. United States,* 568 U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). The Supreme

Court explained why the prosecution does not have to disprove self-defense beyond a reasonable doubt:

> When the prosecution has made out a prima facie case and survives a motion to acquit, the jury may nevertheless not convict if the evidence offered by the defendant raises any reasonable doubt about the existence of any fact necessary for the finding of guilt. Evidence creating a reasonable doubt could easily fall far short of proving self-defense by a preponderance of the evidence.

*Martin v. Ohio*, 480 U.S. 228, 234 (1987). While the prosecution "must prove guilt beyond a reasonable doubt with respect to every element of the offense charged … they may place on defendants the burden of proving affirmative defenses." See *Gilmore v. Taylor*, 508 U.S. 333, 341 (1993) (citing *Martin v. Ohio,* 480 U.S. 228 (1987); *Patterson v. New York,* 432 U.S. 197 (1977)). The Sixth Circuit also observed this standard. *Allen v. Redman*, 858 F. 2d 1194, 1197 (6th Cir. 1988) (habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law).

For these reasons, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell,* 181 F. 3d 731,

740 (6th Cir. 1999); *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). Petitioner's claim that the prosecutor failed to disprove his affirmative defense of self-defense is non-cognizable on habeas review. *Id.*; *Allen v. Redman,* 858 F. 2d at 1200.

Moreover, even if petitioner's claim was cognizable, petitioner would not be entitled to relief.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial inquiry in reviewing a sufficiency of the evidence claim is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A reviewing court does not have to ask itself "whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* (quoting *Woodby v. Immigration & Naturalization Serv.,* 385 U.S. 276, 282 (1966). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–19 (citing *Johnson v. Louisiana,* 406 U.S. 356, 362 (1972)).

A federal court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." *Cavazos,* 565 U.S. at 7 (quoting *Jackson,* 443 U.S. at 326).

Petitioner does not challenge the elements of the crimes here but argues that the prosecution failed to disprove his self-defense claim because the victims themselves hid or tried to conceal the fact that they had weapons on the night in question as well as the fact that the prosecution witnesses' testimony was often inconsistent or contradictory. Although there may have been some evidence to support petitioner's self-defense claim, "in light of the deference to be accorded to state-court factfinding under § 2254(e), as well as the traditional deference accorded to [the factfinder's] resolution of disputed factual issues," petitioner is unable to show that the Michigan Court of Appeals' unreasonably determined that the prosecutor disproved petitioner's self-defense claim. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). Petitioner is not entitled to relief on his second claim.

### Claim # 3: Prosecutorial Misconduct

Petitioner contends that the prosecutor committed misconduct during his closing argument at petitioner's retrial by referring to petitioner's pre-arrest silence.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so

infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

Petitioner first points to the prosecutor's comments:

> And then [defendant] hid out for four months before the Fugitive Apprehension Team finally found him in another county. Does that sound to you like he had an honest and reasonable belief that he had to do what he did?

11/26/2012 Tr., ECF No. 10-9, PageID.1374.

Petitioner also claims that these remarks were impermissible:

> [Defendant] also admitted he ran away, he spent a night in the alley; that he either threw away or lost the murder weapon that night; that he talked to lawyers almost right away; that he didn't turn himself in; that he didn't reach out to anybody in law enforcement prior to his arrest and say, ["H]ey, you got this thing wrong. I know you're looking for me. You don't know what's going on. ["]

> He agreed to [sic] all of that. He wants us to believe
> he did that on advice of counsel?

ECF No. 10-9, PageID.1422.

The Michigan Court of Appeals rejected petitioner's claim, finding that the comments about petitioner's pre-arrest silence were permissible to impeach his self-defense claim. *People v. Wooten,* 2014 WL 2931934, at *7.

As mentioned in addressing petitioner's first claim, the use of a defendant's pre-arrest silence for impeachment purposes does not violate the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process. *Jenkins v. Anderson*, 447 U.S. at 238–39. A defendant's pre-arrest silence may even be used as substantive evidence of his guilt so long as the defendant did not expressly invoke his right to remain silent. *Salinas v. Texas*, 133 S. Ct. at 2179, 2184. The prosecutor's references to petitioner's pre-arrest silence were not improper.

Petitioner relies on *Girts v. Yanai,* 501 F. 3d 743 (6th Cir. 2007) to argue that the prosecutor's statements were improper. *Girts* is not relevant to petitioner's case, because that case involved direct references to the defendant's failure to testify. In *Girts*, the prosecutor quoted the defendant and stated "these are his words. And the words you heard from these folks supplied by him are unrefuted, and they are uncontroverted. *There has been no evidence*

offered to say these people are incorrect. None at all." *Girts*, 501 F.3d at 755 (emphasis original). The Sixth Circuit ruled that by indicating that Girts was the only person that could explain the crime, the prosecution "highlighted the fact that Petitioner did not testify and attached a negative connotation to the exercise of the Fifth Amendment right to remain silent." *Id.* at 756.

In the present case, petitioner testified and claimed he acted in self-defense. It is permissible for a prosecutor to refer to a defendant's silence if it is a fair reply to a defense theory or argument. *Hall v. VasBinder,* 563 F. 3d 222, 233 (6th Cir. 2009) (citing *United States v. Robinson*, 485 U.S. 25, 34 (1988); *Lockett v. Ohio*, 438 U.S. 586, 595 (1978)). Indeed, in the absence of any indication that a criminal defendant had received his *Miranda* warnings, the use of even post-arrest silence to impeach a defendant's credibility when that defendant chooses to take the witness stand does not violate the Due Process Clause. *See Fletcher v. Weir,* 455 U.S. 603, 606–07 (1982). In *Fletcher,* the Supreme Court held that it was not unconstitutional for a prosecutor to use the defendant's post-arrest silence for impeachment purposes, where the defendant testified at trial that he stabbed the victim in self-defense and that the stabbing was accidental. *Id.* In the present case, petitioner testified he shot the victims in self-defense. There was nothing improper about impeaching his testimony with any

pre- or post-arrest silence. Petitioner is not entitled to relief on his third claim.

## Claim # 4: Repackaging of Claims 1 and 3

Petitioner's fourth claim is a repackaging of the arguments he makes in claims 1 and 3, that the judge should have dismissed the case with prejudice because the prosecutor through his misconduct intentionally provoked defense counsel into requesting a mistrial (claim 1), and that the prosecutor committed misconduct during his closing argument at retrial by referring to petitioner's pre-arrest silence (claim 3). For the reasons set out in the sections on those claims above, Petitioner is not entitled to relief on his fourth claim.

## IV. Conclusion

Before petitioner may appeal this Court's dispositive decision, "a circuit justice or judge" must issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the Court has rejected petitioner's habeas claims on the merits, to satisfy § 2253(c)(2), petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529

U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

Although the Court believes that its decision in denying habeas relief is correct, the Court grants petitioner a certificate of appealability on his first claim. The trial judge granted petitioner a mistrial after finding that the prosecutor engaged in misconduct. Although the judge refused to dismiss the case with prejudice, the judge did at times imply that the prosecutor's conduct was intentional. Petitioner is entitled to a certificate of appealability on his first claim because he established that reasonable jurists could debate this Court's decision that there was no misconduct.

The Court denies petitioner a certificate of appealability with respect to his remaining claims because jurists of reason would not find this Court's resolution of the claims to be debatable.

Because this Court grants a certificate of appealability, any appeal would be being undertaken in good faith; petitioner is granted leave to appeal *in forma pauperis. See Brown v. United States*, 187 F. Supp. 2d 887, 893 (E.D. Mich. 2002).

Accordingly,

(1) The Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

(2) A Certificate of Appealability is **GRANTED** on petitioner's first claim but **DENIED** with respect to his remaining claims.

(3) Petitioner is **GRANTED** Leave to appeal *in forma pauperis.*

**IT IS SO ORDERED**.

Dated: April 17, 2019      s/Terrence G. Berg
                           TERRENCE G. BERG
                           UNITED STATES DISTRICT JUDGE

### <u>Certificate of Service</u>

I hereby certify that this Order was electronically submitted on April 17, 2019, using the CM/ECF system, which will send notification to each party.

s/Amanda Chubb
Case Manager